UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PAMELA J. BLANCO,

                        Plaintiff,                       07 Civ.  4065 (CLB)

      -against-

JOHN BROGAN, individually and
the VILLAGE OF SCARSDALE,
New York,

                       Defendants.

-------------------------------------------------------x


### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE PRE-ANSWER MOTIONS OF DEFENDANTS VILLAGE OF SCARSDALE AND SCARSDALE POLICE CHIEF JOHN BROGAN TO DISMISS THE FIRST AMENDED COMPLAINT

This Memorandum of Law is submitted on behalf of Pamela Blanco in Opposition to the separate pre-answer Motions of the Defendants Village of Scarsdale and Scarsdale Police Chief John Brogan to dismiss the First Amended Complaint.

### THE FIRST AMENDED COMPLAINT AND ITS IMPLICATIONS

As alleged in the First Amended Complaint, Plaintiff Pamela J. Blanco is a Caucasian citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. Since April of 1996 she has been continuously employed by the Defendant Village of Scarsdale as a police officer.  (First Amended Complaint, para. 3).

Defendant John Brogan (hereinafter "Brogan"), at all times relevant to this complaint was the duly appointed Chief of Police of the Defendant Village. As alleged in

the First Amended Complaint, "As such he has, over the years, made recommendations for the promotion of police officers to the Village Board and as a matter of established practice Brogan's recommendations are routinely granted by that Board. In practice Brogan, by means of his unilateral authority to recommend, controls *de facto* who is promoted within the Police Department." First Amended Complaint, para. 4.

While not specifically stated, the clear implication of the foregoing allegation is that the Board of Trustees only votes with respect to candidates for promotion that are actually recommended by the Chief and thus Chief Brogan has final policymaking authority at least with respect to the denial of recommendations for promotions. *See* Purdy v. Town of Greenburgh, 178 F.Supp.2d 439 (S.D.N.Y. 2002)

As further alleged in the First Amended Complaint, "During Brogan's tenure as Chief of Police he has, with the knowledge and approval of the Village Board, established and maintained a work environment overwhelmingly hostile to females. In that connection, and in addition to the facts set forth *infra*: there has never been a female police supervisor in the Village's Police Department, for approximately eight years Plaintiff was the only female sworn member of the Police Department, and a second female police officer transferred out of the Scarsdale Police Department to a different jurisdiction by reason of its gender hostile environment." As further alleged in the First Amended Complaint, "The only other female officer, who has been employed by the Village for an abbreviated period of time, has by reason of back-to-back pregnancies rarely worked road patrol." Additionally, the Police Department has no maternity leave policy and no locker room for female officers, who instead are required to change in a bathroom. First Amended Complaint, para. 5.

The First Amended Complaint also asserts that during Plaintiff's tenure with the Department she has repeatedly and continuously been subjected to systemic, gender-based disparate treatment with respect to the terms and conditions of employment including, *inter alia*, being repeatedly taken out of so-called field training by Lt. Bryant Clark who for hours required Plaintiff to ride in his police vehicle while he complained to her about his "bad marriage" and asked her whether she was "dating" anyone." It is alleged that the foregoing were unwelcome and unsolicited, embarrassed Plaintiff, made her uncomfortable, and resulted in male members of the Department referring to Clarke as Plaintiff's "boyfriend." Separate and apart from forcing Plaintiff to ride with him, Clark had delivered to Plaintiff's home for Valentine's Day flowers and purchased for her a membership in a gym so he could "work out" with her. As part of this gender-based disparate treatment, Plaintiff alleges that she was repeatedly skipped for promotion to the rank of Sergeant in favor of males, denied appointment as a Field Training Officer in favor of a lesser qualified, younger male, and denied a Traffic Enforcement appointment in favor of a lesser qualified, younger male. First Amended Complaint, para. 5.

Moreover, Plaintiff alleges that as part of the gender-based disparate treatment, she was denied an otherwise required special uniform for bike patrol, which uniform was provided to younger male officers, was required to use the female "bathroom" as a locker room, and was repeatedly rejected for specialized training which was routinely provided to younger male police officers. First Amended Complaint, para. 5.

The First Amended Complaint goes on to set forth that in or about November or December of 2005, Plaintiff was denied the opportunity for assignment as a Traffic Enforcement officer and that the assignment was given instead to a less experienced male officer and that in or about February 2006, Plaintiff was denied the opportunity for assignment as a Field Training Officer. The assignment was given instead to a less senior, less experienced male officer. ( First Amended Complaint, paras. 6 and 7). The foregoing assignments are looked upon with favor and police officers so assigned in advantageous positions for promotion to sergeant. Id., para. 8.

Plaintiff duly filed a charge of discrimination with the EEOC on or about January 3, 2007 and following Plaintiff's filing of her Charge of Discrimination with the EEOC, for the first time she was finally issued a uniform for bike patrol, and she was permitted to be trained as an instructor in CPR. First Amended Complaint, para. 9.

However, following the filing of that charge of discrimination, Plaintiff was in 2007 skipped twice for promotion to the rank of Sergeant: the first time in favor of a lesser qualified male officer who placed lower than Plaintiff on the Civil Service Eligible List, and, the second time in favor of a lesser qualified male officer substantially junior to Plaintiff by way of seniority and also who was also placed lower than Plaintiff on the subject Eligible List.   First Amended Complaint, para 10.

Plaintiff alleges in the First Amended Complaint, *inter alia,* that the foregoing constitute a violation of her right to equal treatment under the law;  discrimination in terms and conditions of employment on  the basis of gender and retaliation for having filed her Charge of Discrimination..

4

Plaintiff asserts claims that the Village has subjected her to a gender hostile work environment and retaliation in violation of Plaintiff's rights as guaranteed by Title VII and Section 296 of the Executive Law, and has denied her equal protection of the law in violation of the Fourteenth Amendment.

With respect to Chief Brogan, Plaintiff alleges that he violated her Fourteenth Amendment rights to Equal Protection and her right to be free from gender based discrimination as set forth in Section 296 of the Executive Law.

Each Defendant now moves to dismiss the First Amended Complaint on a variety of grounds.

## Controlling Principles of Law

The standards governing a Rule 12(b)(6) motion are well-settled. Sheppard v. Beerman, 18 F.3d 147, 150 (2nd Cir. 1994), *cert. denied*, 115 S.Ct. 73 (1994), *citing* Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2nd Cir. 1987).

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir.2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Weixel v. Board of Educ. of City of New York, 287 F.3d 138, 145 (2d Cir.2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The appropriate inquiry is "not whether a plaintiff will ultimately

prevail, but whether the claimant is entitled to offer evidence to support the claims."
Twombly v. Bell Atl. Corp., 425 F.3d 99, 106 (2d Cir.2005), cert. granted, --- U.S. ----,
126 S.Ct. 2965, 165 L.Ed.2d 949 (2006)." Henneberger v. The County of Nassau, 2006
WL 3513123 (E.D.N.Y.)

Against these well-established standards and when assessing the factual
allegations plead in the Complaint in the light most favorable to the Plaintiff, the
Defendants' motions must be denied. In the event this Court deems the Complaint in any
way to be deficient, leave to replead should be granted.

## POINT I

### THE FIRST AMENDED COMPLAINT SUFFICIENTLY PLEADS A CLAIM OF GENDER DISCRIMINATION AGAINST THE VILLAGE, WHETHER UNDER TITLE VII, THE FOURTEENTH AMENDMENT, AND/OR THE NEW YORK HUMAN RIGHTS LAW

As is so often the case in making pre-answer motions, Defendants ask the Court
to view Plaintiff's allegations in a piecemeal fashion and through tunnel vision.
Presumably the game plan is to try to "chip away" at portions of a case when there is no
real basis for dismissal. The Court should reject that attempt here.

The Village moves to dismiss Plaintiff's Title VII claim of a hostile work
environment first because, according to it, Plaintiff has not exhausted her administrative
remedies in that her EEOC complaint does not assert a "hostile work environment" claim
and because the narrative portion of the EEOC complaint does not make any factual
allegations that could give rise to such a claim. The Village argues, in the alternative, that
even if the claim is properly "before the Court" it should be dismissed since the
allegations of the Complaint even if true do not establish a hostile work environment.

In advancing this argument it is clear that the Village misunderstands the law of gender discrimination.

As relevant here, Plaintiff's claim is gender discrimination and she asserts that claim pursuant to Title VII , 42 U.S.C. 2000-e et seq, pursuant to the Equal Protection Clause of the Fourteenth Amendment, via 42 U.S.C. Section 1983, and pursuant to Section 296 of the New York State Executive Law.  Allegations of a so-called hostile work environment are not, as the Village would argue, an independent claim, but rather factual allegations that support her claim of gender discrimination, i.e. that she was discriminated against in the terms and conditions of her employment because of her gender.  As the Second Circuit has stated in Gregory v. Daly, 243 F.3d 687 (2d Cir., 2001):

> "We believe that this is the appropriate approach in light of recent developments in sexual harassment doctrine.  In this respect, we take particular note of the Supreme Court's current emphasis on the fact that traditional categories of "hostile work environment" and "quid pro quo" harassment do not reflect statutory proscriptions that separate "harassment" from other forms of discrimination.  Rather, the high Court has indicated that these labels, to the extent that they are useful at all, are merely so as descriptions of varying workplace conditions that violate Title VII's basic prohibition on sex discrimination in terms or conditions of employment."

The Second Circuit went on to state in Gregory, *supra*,

> "As a result, a plaintiff seeking to demonstrate sex discrimination is not required to disentangle various threads that, after all, need not have a separate existence, given that various forms of discrimination may well co-exist in the workplace. Thus, a jury might find it more plausible that a supervisor would be willing to fire a woman for refusing a sexual advance if it also had reason to think that he discounted women's abilities to be productive workers.  Or it might conclude that his request for a quid pro quo reflected an insistence that women relate to men according to sexual stereotypes rather than as co-workers.  And these considerations may well, in combination, demonstrate that the employee's sex played a sufficient causal role, as to result in Title VII liability.  This could be so, moreover, even though in isolation, no single way in which sex influenced the employer's decision sufficed to warrant that conclusion. . . ."

And, further

"The court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence for a jury, in assessing whether there was impermissible discrimination . . . would be entitled to view the evidence as a whole.

Id.

Thus, notwithstanding the Village's argument to the contrary, the allegations of the First Amended Complaint, taken as true, are more than sufficient to sustain a claim of gender discrimination.  Indeed, the substance of the First Amended Complaint alleges that during Chief Brogan's tenure as Chief of Police he has, <u>with the knowledge and approval of the Village Board,</u> established and maintained a work environment overwhelmingly hostile to females. It is alleged that there has never been a female police supervisor in the Village's Police Department, that for approximately eight years Plaintiff was the only female sworn member of the Police Department, and that a second female police officer transferred out of the Scarsdale Police Department to a different jurisdiction by reason of its gender hostile environment.  It is also alleged that the Police Department has no maternity leave policy and no locker room for female officers, who instead are required to change in a bathroom.  First Amended Complaint, para. 5.

Moreover, the First Amended Complaint asserts that during Plaintiff's tenure with the Department she has repeatedly and continuously been subjected to systemic, gender-based disparate treatment with respect to the terms and conditions of employment including, *inter alia,* being repeatedly taken out of so-called field training by Lt. Bryant Clark who for hours required Plaintiff to ride in his police vehicle while he complained to her about his "bad marriage" and asked her whether she was "dating" anyone."  Plaintiff

alleges that the foregoing were unwelcome and unsolicited, embarrassed her, made her uncomfortable, and resulted in male members of the Department referring to Clark as Plaintiff's "boyfriend". Separate and apart from forcing Plaintiff to ride with him, Clark had delivered to Plaintiff's home for Valentine's Day flowers and purchased for her a membership in a gym so he could "work out" with her. It is also alleged that as part of this gender-based disparate treatment, Plaintiff was repeatedly skipped for promotion to the rank of Sergeant in favor of males, denied appointment as a Field Training Officer in favor of a lesser qualified, younger male, and denied a Traffic Enforcement appointment in favor of a lesser qualified, younger male, First Amended Complaint, para. 5.

Plaintiff goes on to assert that as part of the gender-based disparate treatment, she was denied an otherwise required special uniform for bike patrol, which uniform was provided to younger male officers, was required to use the female "bathroom" as a locker room, and was repeatedly rejected for specialized training which was routinely provided to younger male police officers. Further, it is alleged that in or about November or December of 2005, Plaintiff was denied the opportunity for assignment as a Traffic Enforcement officer and that the assignment was given instead to a less experienced male officer and that in or about February 2006, Plaintiff was denied the opportunity for assignment as a Field Training Officer. The assignment was given instead to a less senior, less experienced male officer. The foregoing assignments are looked upon with favor and police officers so assigned in advantageous positions for promotion to sergeant. First Amended Complaint, paras 5 -8

As set forth above, the existence of a hostile work environment is but one form - and not the only form -of gender discrimination.

Whether an environment is hostile or abusive cannot be reduced to a "mathematically precise test" and can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, or whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, 510 U.S. 17, 22-23 (1993).

As the Village is well aware, being subjected to unwelcome gestures by her supervisor, including his sending Plaintiff flowers, buying her a gym membership so, as he stated to Plaintiff, he could "work out with her," while simultaneously speaking of his bad marriage and asking Plaintiff whether she was dating anyone could be construed as pressure on Plaintiff to engage in sexual activity with her supervisor, thus also creating a hostile work environment. *See*, Gregory v. Daly, 243 F.3d 687 (2d Cir., 2001) , and collected cases.

However the foregoing allegations are not the only allegations upon which Plaintiff relies to support her claim of gender discrimination.

Thus, it is well-settled that conduct diminishing the respect accorded plaintiff and denying her adequate training or assignments which would further her career can also contribute to the creation of a hostile work environment.   Gregory v. Daly, supra., *citing* Carerro v. New York City Housing Authority, 890 F.2d 569, 579 (2d Cir., 1989). And those, too, are exactly the kinds of behaviors alleged in the First Amended Complaint.

The Village alternatively argues that Plaintiff has not exhausted her administrative remedies with respect to a "Title VII hostile work environment claim" in that her EEOC

complaint does not assert a "hostile work environment" claim and because the narrative portion of the EEOC complaint does not make any factual allegations that could give rise to such a claim.

The Court should give short shrift to this argument.

As set forth above, gender discrimination is gender discrimination is not a claim separate and part from the so-called claim of hostile work environment. All of the foregoing allegations support Plaintiff's claim that she was discriminated against in the terms and conditions of her employment based on her gender.

Additionally, other allegations supporting a claim of gender discrimination, including claims of a gender hostile work environment, even if not specifically raised in Plaintiff's EEOC complaint, may be brought in federal court if they are reasonably related to the claim filed with the agency.    Williams v. New York City Housing Authority, 458 F.3d 67 (2d Cir., 2006). The Village apparently takes the position that Plaintiff's so-called hostile work environment claim, to the extent it is premised on allegations not set forth in the narrative of her EEOC complaint, is not reasonably related to her EEOC complaint.   In advancing this contention, the Village continues to misapprehend the law.

Again, as set forth above, there is no independent and separate claim of hostile work environment. And with respect to conduct alleged in the First Amended Complaint but not specifically alleged in Plaintiff's EEOC complaint, in this Circuit, a "[c]laim is reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Williams v. New York City Housing Authority, *supra., citing*  Fitzgerald v.

Henderson, 251 F.3d 345 (2d Cir., 2001). See also Jute v. Hamilton Sundstrand Corp.,

420 F.3d 166 (2d Cir., 2005). The "reasonably related" exception to the exhaustion

requirement is "essentially an allowance of loose pleading," and recognizes that the

primary purpose of the EEOC complaint is to alert the agency to the discrimination

plaintiff claims she is suffering. Williams v. New York City Housing Authority, *supra*,

*quoting* Butts v. City of New York Dept of Housing Preservation and Development, 990

F.2d 1397 (2d Cir., 1993).

Even accepting the Village's flawed premise that a hostile work environment

claim is a claim distinct from gender discrimination, the Village's contention that

Plaintiff's EEOC complaint does not make out a hostile work environment claim and that

the allegations of the federal complaint are not reasonably related to the EEOC

complaint, should be rejected. This case does not present the situation in which, for

example, the EEOC complaint alleges discrimination on the basis color or dark skin

(race) and the federal complaint alleges another form of discrimination, for example, on

the basis of national origin. See, e.g., Benjamin v. City of New York, 144 Fed.Appx 140

(2d Cir., 2005); see also Deravin v. Kerik, 335 F.3d 195 (2d Cir., 2003).

Plaintiff's EEOC complaint presents a claim of gender discrimination, the precise

claim that she asserts in federal court. It is that claim which the EEOC could reasonably

have been expected to investigate.

Even if this Court were to conclude that the failure of Plaintiff's EEOC complaint

to set forth every allegation of a hostile work environment which is alleged in the

Complaint as preclusive in any way, and we suggest it should not, the federal Complaint

here also asserts a gender discrimination claim pursuant to the Equal Protection clause of

the Fourteenth Amendment, pursuant to 42 U.S.C. 1983. It is settled law in this Circuit

that "most of the core substantive requirements that apply to claims of discriminatory

conduct in violation of Title VII are applicable to claims of discrimination in violation of

the Equal Protection Clause of the Fourteenth Amendment which may be brought

pursuant to 42 U.S.C. 1983. See Tilghman v. Waterbury Board of Education, 154 Fed.

App 221, 2005 WL 3019251 (2d Cir., 2005); see also Dawson v. County of Westchester,

373 F.3d 265 (2d Cir., 2004); Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir., 1997).

Thus, even accepting the Village's argument that the allegations of hostile work

environment are not reasonably related to Plaintiff's EEOC Complaint, thus barring that

claim under Title VII, Plaintiff has nevertheless sufficiently alleged a gender

discrimination claim under the Fourteenth Amendment.

In this connection the Village argues that Plaintiff's 1983 claim should be

dismissed because plaintiff has failed to plead a Monell claim. In other words, the

Village argues that Plaintiff's 1983/equal protection claim should be dismissed because

the Complaint fails to allege and official custom or policy of discriminatory conduct.

This argument is ridiculous.

While it is true that Section 1983 liability may be imposed upon a municipality if

the plaintiff can demonstrate that he suffered constitutional harms because of a

"municipal policy or custom" Monell v. New York City Department of Social Services,

436 U.S. 658, at 690-91 (1978), it is also true that a municipal policy or custom "need not

be contained in an explicitly adopted rule or regulation," Sorlucco v. New York City

Police Dep't, 971 F.2d 864, 870 (2d Cir.1992) or have "received formal approval through

the body's official decision making channels." Monell, supra at 691. And, importantly

here, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," whether "that action is to be taken only once or to be taken repeatedly." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Indeed, "a single act of a municipal officer is sufficient to establish municipal liability if that individual officer is possessed of "final policy-making authority with respect to the area in which the action is taken." <u>Rucci v. Thouberron</u>, 68 F.Supp2d 311 (SDNY 1999), *citing* <u>McMilian v. Monroe Cty.</u>, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

Alternatively, "a municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." <u>Christie v. Iopa</u>, 76 F.3d 1231, 1238 (9th Cir.1999) (citing <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Whether such ratification occurred is generally a question of fact. <u>Field Day, LLC v. County of Suffolk</u>, 2005 WL 24457794 (EDNY 2005).

Here, the First Amended Complaint alleges that Chief Brogan 's recommendations to the Village Board for the promotion of police officers were as a matter of established practice routinely granted by that Board and that in practice Brogan, by means of his unilateral authority to recommend, controls *de facto* who is promoted within the Police Department. Thus, at least with respect to controlling promotions within the Scarsdale Police Department, Chief Brogan is a final policymaker whose determinations can impose liability upon the Village. First Amended Complaint, para. 5 See <u>Purdy v. Town of Greenburgh.</u>, 178 F.Supp2d 439 (S.D.N.Y. 2002).

And, to the extent as set forth above, that it is alleged in the First Amended Complaint, "during Brogan's tenure as Chief of Police he has, <u>with the knowledge and approval of the Village Board,</u> established and maintained a work environment overwhelmingly hostile to females, examples of which are cited in the complaint, it is apparent that this allegation is tantamount to alleging the Board's ratification of the Chief's unconstitutional actions. <u>Christie v. Iopa,</u> 76 F.3d 1231, 1238 (9th Cir.1999) (citing <u>City of St. Louis v. Praprotnik,</u> 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). At the very least whether such ratification occurred is generally a question of fact which cannot be decided on this pre-Answer motion. <u>Field Day, LLC v. County of Suffolk,</u> 2005 WL 24457794 (EDNY 2005).

Similarly, the Village seeks dismissal of the Plaintiff's claim of gender discrimination under the New York State Human Right Law. The Village argues first that "an employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging it, condoning, or approving it." However, paragraph 5 of the First Amended Complaint alleges that during Chief Brogan's tenure as Chief of Police he has, <u>with the knowledge and approval of the Village Board,</u> established and maintained a work environment overwhelmingly hostile to females, with cited examples of the hostile work environment. First Amended Complaint, para. 5.

Thus the First Amended Complaint in this action sufficiently implicates the Village Board of Trustees so as to sustain a claim against the Village under Section 296 of the Executive Law. While the Village argues that Plaintiff's Section 296 claim should be dismissed for failure to file a notice of claim, it concedes that there is recent case law

to the effect that a notice of claim is not a condition precedent to a Human Rights Law claim against a Village. Peterson v. Ocean Beach, 2006 WL 229927 (E.D.N.Y.)

Finally to the extent that Village argues time bar with respect to any of the foregoing claims, suffice it to say that with respect to Plaintiff's EEOC complaint the allegation is that the last discriminatory act occurred on January 3, 2007, the date of her filing, certainly within the 300 day statue of limitations for a Title VII claim. Moreover, as conceded by the Village, claims brought pursuant to Section 19823 and the New York Human Rights law must be commenced within three years of the occurrence of the discriminatory acts alleged in the action. Clearly at least some of the acts occurred within that time frame. [1]

In short, given settled case law to the effect that a complaint will only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief, the Village's motion should be denied. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir., 2000) *quoting* Conley v. Gibson, 355 U.S. 41 (1957).[2]

---

[1] See e.g. Demoret v. Zegarelli, 451 F.3d 140 (2d Cir., 2006), noting that evidence which may not support a claim of hostile work environment may nevertheless be offered to support a claim of disparate treatment on the basis of gender; see also Jute v. Hamilton Sundstrand Corp., 429 F.3d 166 (2d Cir., 2005), holding that evidence of acts which are not actionable because they are time-barred are nevertheless admissible as relevant background evidence and could lead a rational jury to find a causal link between the protected activity and the actionable adverse act. Jute, supra, at 176.

[2] The Chief argues that this is no longer the standard on motions to dismiss and cites Bell Atlantic Corporation v. Twombly, _____ U.S. _____ 127 S.Ct. 1955 (2007) for the proposition that a complaint must plead enough facts to state a claim for relief that is plausible on its face." Even if this standard is to be applied to discrimination cases, it is respectfully submitted that the First Amended Complaint in this action fulfills these requirements.

## POINT II

## THE VILLAGE'S MOTION TO DISMISS
## PLAINTIFF'S RETALIATION CLAIM SHOULD BE DENIED

The Village argues that Plaintiff's claim for retaliation should be dismissed because it is too conclusory. The Village cannot be serious.

The First Amended complaint alleges that Plaintiff duly filed a charge of discrimination with the EEOC on or about January 3, 2007 and following Plaintiff's filing of her Charge of Discrimination with the EEOC (First Amended Complaint, para 9) and that following the filing of that charge of discrimination, Plaintiff was twice skipped in 2007 for promotion to the rank of Sergeant, the first time in favor of a lesser qualified male officer who placed lower than Plaintiff on the Civil Service Eligible List, and the second time in favor of a lesser qualified male officer substantially junior to Plaintiff by way of seniority and who also occupied a scored lower position than Plaintiff on the subject Eligible List. (First Amended Complaint, para. 10). Finally, the First Amended Complaint alleges that the Village's post-EEOC filing, retaliatory skipping of Plaintiff for promotion violated Plaintiff's rights as guaranteed by Title VII, 42 U.S.C. 2000-e et seq. First Amended Complaint, para 14.

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she was engaged in protected activity; (2) Defendants knew of this activity; (3) Defendants took an adverse action against Plaintiff; and (4) there is a causal connection between the adverse actions and the protected activity, i.e., that the Defendants had a retaliatory motive. Hill v. Rayboy-Brauestein, 467 F.Supp. 2d 336 (S.D.N.Y. 2006), *citing* Kessler v. Westchester County Department of Social Services, 461 F.3d 199, 205-206 (2d Cir.,

2006). Proof of causation can be shown either: (1) directly, through evidence of
retaliatory animus directed against the plaintiff by the defendant; or (2) indirectly, by
showing that the protected activity was followed closely by discriminatory treatment or
through other circumstantial evidence such as disparate treatment of fellow employees
who engaged in similar conduct. See Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111,
117 (2d Cir.2000); Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir.1990); Gilford
v. City of New York, No. 2004 WL 1574695, at *7 (S.D.N.Y. July 14, 2004) (quoting
Gordon, 232 F.3d at 117). "Title VII is violated if a retaliatory motive played a part in the
adverse employment actions even if it was not the sole cause, and if the employer was
motivated by retaliatory animus, Title VII is violated even if there were objectively valid
grounds for adverse employment action. See Sumner, supra, 899 F.2d at 209 (internal
citations omitted).

Here, the EEOC complaint was filed in January 2007 and Plaintiff was skipped
for promotion twice before the filing of the federal complaint on or about May 17, 2007 -
or within in a period of not more than four months. While the Second Circuit has drawn
no bright line test to define the outer limits beyond which a temporal relationship is too
attenuated to establish a causal relationship between the exercise of a federal
constitutional right and an allegedly retaliatory action, a gap of four months between the
protected activity of filing the EEOC complaint and being skipped for promotion
certainly suggests such a causal relationship. See, Abreu v. Suffolk County Police
Department, 2007 WL 608331 E.D.N.Y., citing , Grant v. Bethlehem Steel Corporation,
622 F.2d 43, 45-46 (2d  Cir., 1980); Cioffi v. Averill Park Central School District, 444

F.3d 1158 (2d Cir., 2006) , Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545 (2d cir., 2001).

In addition, because the retaliation in this case involves failure to promote, it may well be that the Village was simply unable to undertake the adverse action sooner, thus also rendering the four month period between the protected activity and the adverse employment action sufficient to establish a causal connection between the two. See Grant, supra., 622 F.2d at 45-46 (2d Cir.1980) (holding that plaintiff established causation despite an eight month lapse in time when the defendant was unable to retaliate in the manner alleged any sooner); *see also* Moore v. Consol. Edison Co. of New York, Inc., No. 00 Civ. 7834, 2007 WL 831807, at *7 n. 11 (S.D.N.Y. Mar. 20, 2007) (distinguishing Grant on the basis that the defendant in that case had no opportunity to retaliate immediately after plaintiff's protected activity); Hurd v. New York Health & Hosp. Corp., 2007 WL 678403, at *6 (S.D.N.Y. Mar. 5, 2007); Donlon v. Group Health Inc., 2001 WL 111220, at *3 (S.D.N.Y. Feb. 8, 2001); Bernhardt v. Interbank of New York, 18 F.Supp.2d 218, 226 (E.D.N.Y.1998) (eleven months between protected activity and firing might suggest causal connection where defendant had possible reasons for delaying firing).

Again, given settled case law to the effect that a complaint will only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief, the Village's motion should be denied. Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir., 2000) *quoting* Conley v. Gibson, 355 U.S. 41 (1957).

## POINT III

## CHIEF BROGAN'S MOTION TO DISMISS THE EQUAL PROTECTION AND HUMAN RIGHTS LAW CLAIMS AGAINST HIM SHOULD BE DENIED

Chief Brogan seeks dismissal of the two claims alleged against him because incredibly, his counsel argues that the First Amended Complaint does not plead sufficient personal or actual involvement in the claimed violation of Plaintiff's Fourteenth Amendment rights to equal protection or violation of Plaintiff's rights under Section 296 et seq of the New York Executive Law. This argument represents Brogan's counsel vain hope that the Court will view the First Amended Complaint in a piecemeal fashion rather than, as required by settled case law, as a whole and in the light most favorable to Plaintiff.  When considered in this manner, Brogan's arguments for dismissal must be rejected.

The First Amended Complaint alleges that at times relevant to this action, Brogan was the duly appointed Chief of Police of the Defendant Village and that "As such he has, over the years, made recommendations for the promotion of police officers to the Village Board and as a matter of established practice Brogan's recommendations are routinely granted by that Board. In practice Brogan, by means of his unilateral authority to recommend, controls *de facto* who is promoted within the Police Department." First Amended Complaint,  para. 4.

The First Amended Complaint further alleges that **during Brogan's tenure as Chief of Police he has, with the knowledge and approval of the Village Board, established and maintained a work environment overwhelmingly hostile to females**. In that connection, the First Amended Complaint alleges, *inter alia,* there has never been

a female police supervisor in the Village's Police Department, that for approximately eight years Plaintiff was the only female sworn member of the Police Department, that a second female police officer transferred out of the Scarsdale Police Department to a different jurisdiction by reason of its gender hostile environment, the Police Department has no maternity leave policy, and that the Department has no locker room for female officers, who instead are required to change in a bathroom.

In addition, as clearly relevant to Chief Brogan, the First Amended Complaint alleges that during Plaintiff's tenure with the Department she has repeatedly and continuously been subjected to systemic, gender-based disparate treatment with respect to the terms and conditions of employment including being repeatedly skipped for promotion to the rank of Sergeant in favor of males, being denied appointment as a Field Training Officer in favor of a lesser qualified, younger male, being denied a Traffic Enforcement appointment in favor of a lesser qualified, younger male, being denied an otherwise required special uniform for bike patrol, which uniform was provided to younger male officers, being repeatedly rejected for specialized training which was routinely provided to younger male police officers, being denied the opportunity for assignment as a Traffic Enforcement officer which assignment was given instead to a less experienced male officer, being denied the opportunity for assignment as a Field Training Officer, which assignment was given instead to a less senior, less experienced male officer, and finally, being skipped twice for promotion to sergeant shortly after she filed her EEOC complaint of discrimination.

Reading the First Amended Complaint most favorably to Plaintiff, it alleges that Chief Brogan personally had control over assignments and promotions within the

Scarsdale Police Department, and that he exercised this control in a manner which

discriminated against Plaintiff on the basis of her gender and in retaliation for Plaintiff's

having made a complaint of gender discrimination.

Based upon the foregoing, under any standard applicable to a Rule 12 motion,

Brogan's motion must be denied.

### CONCLUSION

**THE DEFENDANTS' MOTIONS TO DISMISS SHOULD IN ALL
RESPECTS BE DENIED; IN THE ALTERNATIVE, LEAVE TO REPLEAD
SHOULD BE GRANTED**

Dated: White Plains, N.Y.
        October 12, 2007

LOVETT & GOULD, LLP
By: _____ (JBG 4510)
Jane Bilus Gould (JBG 4510)
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401